LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO. v. FREDERICK EHLERT.

1. NEGLIGENCE TO PUT MAN IN CHARGE OF LOCOMOTIVE WITHOUT ASCERTAINING THAT HE HAS REQUISITE KNOWLEDGE.

Knowledge of the fact that steam remains in the steam chest of a railway locomotive when stopped, with expansive power sufficient to move the locomotive for some time afterwards upon releasing the brakes, unless the stopcocks are opened, is essential to constitute a person competent to be placed in charge of a locomotive, which fact a railway company, in the exercise of due diligence, is bound to ascertain to be within the knowledge of such person before putting him in charge thereof. The fact that a fireman has had a year's ex-

perience operating a locomotive under an engineer, and from time to time exercised the duties of the engineer, without the company having ascertained that he has due knowledge, is not sufficient to release the company from liability for injuries sustained by another employe, caused by placing such fireman in charge of a locomotive to move it to the company's coal chutes for coaling, which, upon his releasing the brakes and reversing the engine, started suddenly backward without his letting on other steam than that remaining in the steam chest.

**2.** RELEASE FROM LIABILITY FOR INJURIES NOT BINDING, WHEN.

A railway company, in securing the release from liability for injuries sustained by an employe in its service, is bound to acquaint the latter with the fact that he thereby waives all damages against the company for such injuries. Calling him into the company's office, questioning him as to the manner of receiving his injuries, requiring him to sign such statement, and also a release without making the fact known to him by any conversation or negotiation that he is selling his rights, laying a dollar on the table, taking a receipt therefor, and recalling such servant to take the dollar and spend it upon his asking what the money was for, are not facts sufficient to show understanding of his act, the servant not understanding the meaning of the term "release."

ERROR to the court of common pleas.

E. D. Potter, for plaintiff in error.

D. H. Commager, Ashton Coldham and Harvey Scribner, for defendant in error.

HAYNES, J.

In this case a petition in error was filed to reverse the judgment of the court of common pleas which the defendant in error, the plaintiff below, recovered against the railway company for alleged injuries sustained by him through the negligence of the servants of the company and of the company. Ehlert had been employed by the railway company for several years; he was engaged at a certain coal chute at Air Line Junction. A certain engine had arrived in the yard and been taken to a place near the water tank, and was there left in the possession of a fireman, acting in the capacity of a hostler, by the name of Toner. He ran the engine up to the coal chute to a certain number or to a platform; the chute was then lowered for the purpose of filling the tender with coal; after he had placed the engine at the platform, notice was given to him to back up the engine, that the chute did not feed; thereupon he reversed his engine, as he says, and loosened the brake, let go the air brake, and immediately the engine started back.

Ehlert, who was on this chute, seeing the engine starting back, suddenly, as he says, thought he would be liable to be hurt or crushed; thereupon he dropped down between the coal chutes and the locomotive, and received injuries, as he claims, by reason of the negligence alleged.

Now two questions are presented, it seems to us, in the case, whether this man Toner, engineer or hostler, was a competent person or not, and if

not, whether the company had taken reasonable steps before allowing him to operate this engine, to ascertain whether he was or was not a competent person; and, second, whether or not a certain paper writing, which was signed by Ehlert, purporting to be a release of all claims against the company, was binding upon him, or whether, by reason of the facts which he states in his petition, the paper was not binding.

Now Toner had been in the employ of the company as a fireman for some time, and for about a year had been running on an engine with an engineer; and it is claimed that he had, from time to time, exercised the duties of engineer in operating a locomotive and had become familiar with the methods of operating locomotives, and that he was, at the time he went upon this engine and took it up to the coal chutes, a competent person for that purpose, and the defendant offered the testimony of some of the persons with whom he has operated as engineer and some persons in charge of the shops, in regard to his qualifications as an engineer or as a hostler for the purpose of managing a locomotive under the circumstances under which it was placed at the time of this accident.

The jury found he was not a competent person, and it is claimed that was against the weight of the evidence. Now we have carefully read the testimony and examined it, and we are of the opinion that the jury was justified in coming to the conclusion that they did. It appears that this young man, from his own examination, his answers to the questions put to him when he was upon the witness stand, did not have that knowledge of steam and its effects upon the steam chest that would make him a competent person to run and use an engine under the circumstances he was using this engine. It seems that when he reversed the engine and opened the air brake, there was some steam in the steam chest, sufficient to send the locomotive back and move it, according to the testimony of some of the witnesses, quite rapidly. It appears that it is the custom (and it seems to be a proper custom) when an engine is stopped, for the stopcocks to be opened, so that the steam in the steam chest will pass out and pass off; that is, if they are left closed, so much steam as happens to be in the steam chest at the time the locomotive is stopped remains there; and its expansive force remains and may remain for some time, according to circumstances; and it seems to us from the testimony that he was not familiar with this fact; certainly not as familiar with this fact as he ought to have been to be left in charge of a locomotive, placed in the position he was placed, where, upon his handling, would depend the safety of others. Nor do we think that the company had exercised sufficient care in ascertaining as to the qualifications of this man to handle this locomotive before permitting him to do so. It does not seem that any steps had ever been

taken directly to ascertain what he did know in regard to the locomotive in order to operate it, or the effects of steam in the steam chest, if left there under the circumstances which he left it at the time. And we think the company was derelict in its duty in allowing this man to take possession and use this engine, without further knowledge of his qualifications.

We therefore say that we are of the opinion that we may not disturb the verdict of the jury in respect to these questions. We are inclined to the opinion that their conclusions are correct.

Now, after his injury, the party signed a release—no question but that it is a release in form. It appears that he went down there to go to work. He says he went, and the foreman told him that before he went to work, he must go into the office and see the person who had charge there. At any rate, he went down and did go to the office. He found there the claim agent and the foreman, and perhaps another party; and he was asked to give a statement in regard to the manner in which the injury occurred. He was asked certain questions, and he answered them. We think there is no doubt about that, although he, in his testimony, is inclined to deny that he did, although the plaintiff admits that the statement was signed by him. It was not offered in evidence; it was not among the papers in the case.

At the same time, another paper was shown to him, which is a release, and it was read to him. We think there is no doubt that it was read to him. The testimony of the claim agent, Brown, and of the foreman, also the testimony of another party, Shambo, indicate that it was read to him. Curtis and Brown did not seem to see Shambo there, but he testifies as to what took place there. And after it was read it was signed by plaintiff at the request of the claim agent. He also signed a receipt for one dollar, which was laid down on the table, and which, it seems, he took away. At first he said he was going without the dollar, but they told him to take it.

Now he claims he did not understand the purport of that paper, its nature and its character; and that he did not understand that he was releasing the company of all claims he might have against it, of his right to maintain an action. As to the character of some of the statement, in the nature of admissions, we think he, of course, understood it. He could talk English pretty well, and it was in proof that he was an ordinarily intelligent man, and could understand enough about the facts to understand those matters.

The real point in our minds is whether he understood the nature of the term "release," and that he was releasing all claim or any rights he might have against the company. And we are inclined to the opinion

that the jury were justified in finding that he did not know that.   We have read the testimony of Brown and Curtis, the testimony of Shambo, as well as the testimony of Ehlert himself, in regard to what took place at that time; what transpired there.   While they read the release to him, which he signed, and perhaps the receipt, the nature of that which was transpiring, it seems to us, was not sufficiently explained to him.   There seems to be a total want of any conversation, or any agreement between Curtis, Brown and Ehlert, that he was negotiating with them; that they were negotiating with him for a release of all claims he had against the company for the injuries which he had received, or that he knew without any explanation on their part what he was negotiating for.   He says that they sat at a table, took down his statement and had him sign a paper and laid down a dollar.   He says he asked them what the dollar was for; they said, for him to take it out and spend it.

We do not think that is a proper manner in which to settle a case of that kind; a case of that importance in regard to any injury.   The parties with whom such dealings are had should be negotiated with the facts explained fully and perfectly, that they are buying him off; that they are purchasing from him a release from all damages, or all claims he might have, or be supposed to have against them for the injuries that he has received at the time he was hurt.

For these reasons we are inclined to the opinion that the verdict of the jury is correct and ought to be sustained.   We think that the negligence, if negligence there was, is attributable to the company; so the question of fellow servant does not arise in the case; so we understand the charge of the court to the jury to be.   The charge seems to be very full, and stated the law clearly to the jury; so they seem to have understood the issues very fully.   For the reasons stated, the judgment of the court of common pleas will be affirmed without any penalty.